Good morning, Your Honours. Good morning, Counsel. Hasmik Bedalyan-Collins, Deputy City Attorney for the City of Pasadena for the Appellants. Before I begin, I'd just ask to reserve three minutes of my time for rebuttal, Your Honours. All right. You understand we're arguing both? Yes, Your Honour. Yes. In fact, that was one of my preliminary issues, that because we're arguing both, I'm just going to interweave them in my argument and not argue two separate issues within my argument. All right. So may it please the Court, this case really boils down to whether a plaintiff in a federal court case can allege facts in their federal court complaint that contradict facts established by another court, and that if he does, if the federal court is then bound by those contradictory facts in doing a qualified immunity analysis. And I'd submit to this Court that the answer to both of those questions is no. The plaintiff cannot plead facts that are contradictory and essentially force a defendant or the court to be bound by those contradictory facts in analyzing qualified immunity and providing that immunity to a public official at an early place in litigation. Here we have an individual, this is Mr. Holloway, who pled to and was convicted of a felony violation for Penal Code 69, and that's violently or by threat or use of force resisting or obstructing arrest. Now, of interest, this started with Mr. Holloway going to a preliminary hearing where he was initially charged with a violation of Penal Code 245-D1. That's an assault with a deadly weapon on a police officer. During that preliminary hearing, the court found and held Mr. Holloway to answer, finding that there was probable cause that he did, in fact, assault a police officer with a weapon. In fact, the transcripts from that preliminary hearing establish, through Officer Horn's testimony, that he pointed the weapon at him and Officer Horn believed that he was going to shoot him. That was the officer's testimony? That's correct, Your Honor. Established isn't quite the word. Well, that was the only testimony for that interaction during that preliminary hearing, Your Honor. There was no testimony by the defendant to dispute that. There was no testimony by any other officers. I think what you're saying is that testimony, taken as a fact, establishes at least probable cause for that violation, right? That's absolutely correct, Your Honor. I think your case is really just a regular, what we call a Heck v. Humphrey case, right? Isn't it? It's a little bit of both, Your Honor.  In other words, you're saying that his conviction for that penal court offense is inconsistent with his 1983 claim, right? That he didn't have a gun, his back was turned, and he was shot with excessive force, right? That's correct, Your Honor. In fact, we made the Heck v. Humphrey argument in the trial court as well. In addition to the qualified immunity argument. However, since the qualified immunity argument is the only one that's immediately appealable on the basis of an interlocutory appeal, that's why we're here on the qualified immunity. The qualified immunity would essentially do the same thing, which would allow us to have immunity for Officer Horn. Obviously, it wouldn't get rid of all of the causes of action, whereas the Heck v. Humphrey would. But that gets rid of the 1983 cause of action, which deals with the majority of the issues here. So because of the rulings on the preliminary hearing, and then furthermore, the plea and sentencing where Holloway's attorney stipulated that there was a factual basis, and the court found that there was a factual basis based on the preliminary hearing, where Officer Horn testified that Holloway had pointed a gun at him, and that is the reason why he shot him. If we don't take judicial notice and we don't have or consider that disputed testimony, would your argument be the same? It would, Your Honor, because even if this court does not take judicial notice of the preliminary hearing, or even the plea and sentencing, Laura Corpolo did take judicial notice of the probation, the certified criminal docket, which established that the criminal court, that they stipulated to a factual basis for the plea. But PC-69 also covers conduct of a person who attempts to deter or prevent an executive officer from performing his duty. So do we know what the factual, setting aside the documents that you want us to take judicial notice of, do we know the factual basis that the trial court found in taking this plea? This is, of course, are you assuming, Your Honor, that you're not looking at the preliminary hearing or the plea and sentencing? Right. Okay. The one thing I would say to that is the trial court now has looked at those and has made a ruling, which is the basis of the second appeal. So I do think that it's something that this court can consider and it's part of the appeal, which is why we're here. But even assuming, Your Honor, that we don't look at the preliminary hearing or the plea and sentencing transcripts, you still have the docket S to the Penal Code 69. And Penal Code 69, as this court is well aware, is very different than a PC, Penal Code 148. It's not simply resisting. It's not simply obstructing. It's doing so by threat or force and use of violence. So any which way that you look at these facts that have been alleged in the federal court complaint by Mr. Holloway, they are contradictory because they do not add up to a violation of Penal Code 69. The only thing that the defense counsel stipulated to at the preliminary hearing, according to the transcript, is that there was a factual basis for the plea. It doesn't necessarily mean that he agrees that all the testimony of the officer was truthful. That's correct. Now, what are the elements of the offense that he pleaded to? Well, at the preliminary hearing, it was a 245. To the plea and sentencing, it was to a PC 69. And the elements are that it would be a threat, that it would be resisting or obstructing by use of threat, force, or violence. All right. Now, that could have happened. That all could have happened before he threw the gun away, couldn't it? All those elements could be met. Theoretically, Your Honor. In theory. However, that's not what's pled in the federal court complaint. That's not what? That's not what the plaintiff, Mr. Holloway, has pled in the federal court complaint. Well, what has he pled? He's pled the simple, all he's pled is that he ran away from Officer Horn, that he pulled a gun from his pants pocket, and he threw it over the fence. Why did he have to plead that he committed some act by threat and violence? That's not really relevant to his complaint. His complaint is that at the point he was shot, he threw a gun over the wall and handed it back to the officer. I mean, that's his plea. Those are the facts he's pleading. Why in his complaint does he have to say, previously I threatened the officer? Generally, Your Honor, I might agree with you. But here's the problem. When you look at the federal court complaint for Mr. Holloway, here's what he says. This is excerpts of record, page 137. He says, The factual basis for plaintiff's conviction occurred when plaintiff ran away from Horn and when he pulled a gun from his pants pocket to toss it over the fence. Once plaintiff stopped running from Horn and had thrown the gun over the fence, plaintiff was no longer resisting. And so he himself has established, for whatever reason, that those are the acts that led to his conviction for the PC-69. And our position is these facts do not amount to a PC-69. And when these acts do not amount to a PC-69, what you've essentially done, what Mr. Holloway has essentially done, is now tried to bind the defense or the court on this factual basis, on this factual scenario for the qualified immunity analysis. And that's exactly what the judge did. That's exactly what Judge Schneider did. But the statute says that you can be convicted of PC-69 if there was an attempt. So I'm not sure about that last argument you made, that under the facts as pled by the plaintiff, that he legally can't amount to a PC-69 violation. Because that violation statutorily also cover attempts. So it seems to me somebody under that factual scenario as pled by the plaintiff could be convicted of PC-69. No, Your Honor, because he doesn't say that I attempted to do any one of those things either. Sure, but the conduct. If it doesn't meet the elements of actually deterring an officer in the performance of his duty by means of threat or violence, it's an attempt to deter the officer by means of force and violence. I agree with you, Your Honor. It does not matter whether it actually detracted or obstructed. It may have just been an attempt to do so, but that's not what he claims. All of the facts that he's alleging in his complaint do not even amount to an attempt. Because he simply says that I ran away, I pulled the gun, and I threw it over the fence. That's paragraph 47 of his complaint. That's contradictory to his complaint, to his criminal court plea. And because that contradicts, that essentially is what Judge Schneider focused her qualified immunity analysis on. And that brings me to my next point, which is that if there is contradictory evidence in a complaint, the court is not bound by that contradictory evidence in doing the qualified immunity analysis. It can look at factors outside of that, the facts, the judicially noticeable documents outside of that, to make that determination. And that's where the certified criminal docket, the preliminary hearing transcript, the plea and sentencing all come into play. And since the motion, since after that motion to dismiss, the court has now considered that and still reaches the same wrong conclusion. Well, but what the court said in the 62.1 proceeding was that there's other evidence, right, that was elicited at the preliminary hearing that's consistent with the plaintiff's allegations and then recites some of those facts. That's actually not correct, Your Honor, because if you look at the preliminary hearing transcript, the only person who testifies as to the incident of the shooting is Officer Horn. The other three individuals who testified... Well, what about Officer Jones? Officer Jones was not there during the shooting. That's why that portion of the transcript that Judge Schneider took from the preliminary hearing is actually incorrect. It actually says he was not there during the time of the shooting. Oh, no, no, no, he didn't say he was, but he was there right after the shooting, right? That's correct, Your Honor. And so the only person who was there to establish what happened during the shooting was Officer Horn. So the testimony of Officer Jones... Well, wait a minute now. Are you saying that Jones' testimony should be disbelieved? No, Your Honor. What I'm saying is that Officer Jones' testimony is irrelevant. It's legally insignificant as to the question. I heard Horn say, don't move, and then did he have the gun still pointed at Mr. Holloway? Yes, ma'am. At some point did you hear Horn say he threw the gun somewhere over the back? Not those exact words, but yeah, Horn said Holloway threw the gun. Yes, Your Honor, and if you look at the sentence before that, it says thereafter Jones located Horn and plaintiff's moments after the shooting. So what are you saying, we should disbelieve that testimony? No, Your Honor, not disbelieve it. It's that this is not relevant as to the analysis of... Why not? Because this is what Officer Jones saw after he came onto the scene, after Officer Horn had already shot Holloway, after Holloway had already pointed the weapon. Because when you look at the preliminary hearing transcript, it's very clear that Officer Jones was not there to witness the shooting itself or the fact that Holloway had pointed the gun at him, which necessitated Officer Horn's shooting. This section that you're reading from, it's a little unclear as to why that's brought in there. So it's not that it's disbelievable. It's that it's legally insignificant. When you look at the facts that are all there, when you consider them all, it's clear that a qualified immunity applies because you have an individual who pointed a gun at the officer, an officer who thought he was going to be shot, and he shot him. And... I don't recall whether this is in the record. Were any of the shots in the front? Your Honor, those are, I can tell you from what I know, those are in the front. But that's not part of the record, Your Honor. So as far as the court knows, it doesn't establish, none of the record establishes where the shots are. All the shots were in the front? According to Officer Horn's testimony, all of the shots were to the front of the body. Now, there's no medical coroner testimony or anything in there because that's not part of the record. But the only thing that we have as part of the record is Officer Horn testifying that he shot the individual, all of the shots, at the front of the body. I see that my time is at an end, actually. So unless there are any other questions. Let me ask you another question. Is it clear to you that the second part of this, the judge's decision that she's not inclined to, would not be inclined to change her, is that clearly appealable now? Yes, Your Honor, it is because it would still be a collateral order as to immunity. So that is our position. Well, it's not even an order. It's just an indication. Yes, Your Honor, but it does deal with the order as it deals with immunity. So it is an order. Well, when I ask you, is it clear to you, is it clear from any case it was an open question? It's my position based on my review, Your Honor, that it is not an open question. But I don't believe. If you're saying that that's your legal opinion, based on your general view of what the applicable law should be, that's one thing that you're certainly entitled to say that. But the other question I had is whether it was clear, by which I meant, are there cases that have decided that question? Your Honor, I wasn't saying that it's my opinion, that's what it should be. What I was saying is based on my research, based on the rudder guide, based on my research on the cases based on the rudder guide. Okay. Could you give me a case? Yes, Your Honor. If I may have one minute? Yes. In fact, you did appeal it, right? Because there's a case number assigned to that appeal. That's correct, Your Honor. At this time, there already is. All right. No, that doesn't mean that you can appeal anything. It doesn't mean that it's a sound appeal. All right. Yes, Your Honor. I'm interested in the case, too. What is it? Sure. It says here, and the reason I'm telling you this is it talks about the premise. It says the moving party can file a notice of appeal from the denial and file a motion in the appellate court to consolidate the new appeal with the existing appeal. And it directs us to the next section. From the denial of what? From the denial of the motion for an indicative ruling for relief from the judgment. Yes, that's what I wanted to say. Yes. So then, okay, so it will say, as a collateral interlocutory order subject to immediate review, if the order is viewed as preliminary to a later proceeding, and that would be Armstrong v. Schwarzenegger. And let me see if I can give you the, it's 622F3D1058. The pin site is 1064. It's a Ninth Circuit 2010 case, Your Honor. There's a couple more cases as it relates to that, too, but that's just one of the first that applies. Is that a case in the prison conditions? I don't remember that specific one, Your Honor, but I read a few that deal with the same exact issue because it's attached to another interlocutory appeal, and that essentially if we didn't deal with this. I think I may have written that opinion. I'm sorry, you may have written it? Yes. It's certainly possible, Your Honor. Then it must be correct if that's what it is. So if there's nothing further, Your Honor, I'll submit at this point. And maybe pray for a couple minutes on rebuttal if I need to. Thank you. Armstrong was a plaintiff in those cases. I remember that. Good afternoon, Your Honors.  First I want to answer some of the questions the Court had with regards to the shots. None of the shots are to the front. They're all to the back. He was shot in the back. He was shot in the back of the hip, the back area of the armpit. None of the shots are to the front. So with regards to Your Honor's question about where the bullets hit, all of them were to the back. Is that in the record? No, it isn't in the record. The record clearly does indicate that he was shot in the back and in the spinal cord, but it doesn't reference any of the other shots. But I can let you know, based on the review of the medical records, none of the shots were to the front. Now, I would first like to address the issue of the Court's denial for written indication. First, Your Honor was right. That isn't even an order, but let's put that aside for a second. That's not an immediately appealable order. Under the final judgment rule, only final decisions are appealable. Obviously, there's exceptions for interlocutory appeals such as the denial. But also, post-judgment orders, orders entered after final judgment are usually appealable, and this is an order made, obviously, after judgment, right? Well, the appeal with regard to the written indication isn't an appeal made after a final judgment. That order ---- Sure. The 60B motion, by definition, addresses a judgment that was previously entered and says you should change it. Well, with regards to the motion to dismiss, 12B6 motion, that one they can appeal with regards to the denial of qualified immunity. It's been clearly established you could file an interlocutory appeal with regards to denial of qualified immunity. That's been held to be an exception to the final judgment rule. The denial for written indication isn't an exception to the final judgment rule. Procedurally, what the defendants would have had to have done, when the court issued the order denying written indication, under 28 U.S.C. 1292B, they would have had to petition the district court to certify this order so they could submit it as an interlocutory appeal because it's not an immediately appealable order. And the remedy that they're given is to petition the district court, district court, we would like you to certify this order so we could file an interlocutory appeal. The appellant simply bypassed that step and just simply filed the appeal. So with regard to that, that is not an immediately appealable order. So, therefore, that appeal should be dismissed. Further, not only is it not an immediately appealable order, with regards to the preliminary hearing transcript and the plea hearing transcript, first of all, the only reasons those were never submitted to the district court for the motion prior to them bringing the motion to dismiss and it's indicated in the briefs, was a lack of due diligence on behalf of the appellants. This preliminary hearing transcript was available well in advance of their due date to file their motion to dismiss, but it was only for a lack of due diligence that they never attempted to obtain these transcripts prior to having to file their motion to dismiss. They only did it afterwards. Now, I heard a little – well, first of all, with regards to this appeal, Your Honor, this is a Heck v. Humphrey appeal. Let's call it what it is. It's kind of disguised as a qualified immunity. All right. Let's just talk about it a second. Let's talk about Heck v. Humphrey. What's your response to the fact that the city says that you're bound by the preliminary hearing in the state court where the facts that supported or gave cause for the plea were basically the officer's testimony and the court found that was sufficient factual basis for the plea? What's your response to that being what you have to counter? I understand. That is a hurdle in this case, but I first think it's important to point out, as the Ninth Circuit held in the Cunningham v. Gates case, that's a 2000 case out of the Ninth Circuit, the Ninth Circuit specifically held – I don't know if you wrote that opinion as the other one, but the Ninth Circuit specifically held in that case an interlocutory order denying a Section 1983 defendant's assertion of the Heck defense is not immediately appealable. Unlike immunity rights, which are lost if the case goes to trial, the order denying dismissal based on Heck can be reversed after final judgment without departing from Heck's holding or purpose. The appellants just argued that somehow this is all intertwined. Qualified immunity can be appealed. Exactly. But qualified immunity could be appealed, but the Heck issue is not immediately appealed, because even if you reserve appealing the Heck issue until after the final decision, it doesn't depart from Heck's holding or purpose. And that was specifically what the Ninth Circuit held in Cunningham v. Gates. So our position – But in the context of qualified immunity, was it? They specifically addressed qualified immunity. And what they said is Heck is not the same as qualified immunity. What they said, a Heck defense, unlike immunity rights, which we're talking about which are lost if the case goes to trial, obviously you know qualified immunity is an immunity from suit, an immunity not to stand trial. And the Ninth Circuit specifically said, unlike immunity rights, which are lost if the case goes to trial, the order denying dismissal based on Heck can be reversed after final judgment without departing from Heck's holding or purpose. So really, for purposes of this interlocutory appeal, it should be limited to, did the district court commit error in denying Officer Horn qualified immunity? I heard a lot of talk about the record. Let's talk about the record. The only record that the district court had to go on was the first amended complaint, and they took judicial notice that he pled guilty to Section 69 of the Penal Code. That was it. None of the transcripts of either the preliminary hearing or the plea hearing are part of the record. They weren't part of the record that the district court had. And my understanding is the Ninth Circuit is here to determine whether the district court erred in denying Officer Horn qualified immunity. Well, the record was limited to the district court, to the first amended complaint, and to the fact they took judicial notice only that he had pled no contest to PC69. Now, this is a motion to dismiss. Assuming our facts to be true, the factual basis for the criminal conviction occurred prior to Mr. Holloway being shot. Mr. Holloway was in a brief foot pursuit with Officer Horn. Keep in mind, Officer Horn is by himself during this brief foot pursuit. During this foot pursuit, Mr. Holloway pulls out a gun from his pants in the presence of Officer Horn. He pulls out his gun, by the way. It stops Officer Horn in his tracks. Then in the presence of Officer Horn, Mr. Holloway pulls out that gun and then throws it approximately 15 feet over a fence. If we press pause until that specific point in time, we have satisfied all of the elements of PC69. This goes back to the heck argument, which we say isn't appropriate for this particular point anyways, but let's just address it because it's the elephant in the room. What are the elements of PC69? I'll read you the exact elements right now, Your Honor. I have it right in front of me. PC69, any person who attempts by means of any threat or violence, and this was emphasized in the district court when they cited PC69, any person who attempts by means of any threat or violence to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists by the use of force or violence such an officer in the performance of their duty. Here, the threat that we are saying occurred. Clearly, if an officer is chasing a suspect by himself and he sees that suspect pull out a gun from his pants, anybody is going to be threatened, and the district court shot down their argument that that would not constitute a threat because it's obvious. You chase a guy and he pulls a gun out from his pants, you're going to be threatened by that. And to argue to the contrary is simply without merit. Now, going back to the issue of qualified immunity and whether the district court committed error in denying Officer Horne qualified immunity, let's do the Saussure two-prong analysis. First prong, was there a constitutional violation? Let's assume the facts in the First Amendment complaint to be true. You shot an unarmed guy in the back. When you see his hands extended to his side and you see that his hands are visibly empty, after which you've already seen him toss a gun approximately 15 feet over the fence. If you shoot an unarmed guy in the back when you see his hands... At that point, he doesn't know he's unarmed. He could have another gun. That's true, but he does see that his hands are visibly empty. But he does not know that he's unarmed. That's what you said, he's unarmed. And the officer does not know that. The officer knows he's already tossed one gun 15 feet over the fence. He doesn't know. Okay. And the officer also sees that this individual's, that Mr. Holloway is facing away from the officer, that his hands are extended to his sides, and that his hands are visibly empty. That's very important. He's not moving. He's essentially given up at that point. If you shoot an individual under those circumstances, it's clearly a constitutional violation, and it would be hard to argue otherwise. Now let's talk about the second problem of the Saussure analysis. Was that right clearly established? I argue that the Supreme Court established in 1985 under Tennessee... If you take the facts the way you allege them and just take it after the gun is thrown, he's standing there like that, and you shoot him in the back, I don't think there's any doubt that that would be a violation. I think the serious question is something different. Is that what happened, and was there a real threat after? Just by pulling out the gun and throwing it over the... Does that constitute a threat, the throwing of a gun over a wall? You say the threat happens when he pulls the gun out of his pocket. We say the threat occurs in the initial foot pursuit. The threat occurs when Horn is chasing Holloway, and Horn removes that gun from his pants. That's part of the threat, which causes Horn to stop chasing after him. That's another part of the threat. When he then, with the gun in his hands, tosses it over the fence, that still could be constituted as a threat. He has the gun in his hand. It's still in possession. But once that gun has been flung approximately 15 feet over a fence and Mr. Holloway makes absolutely no attempt to go retrieve that gun, that is what we're saying would constitute the threat. And after he threw the gun over the fence, puts his arms to his side, showing that he has nothing in his hands... You're not contending that any other threat occurred prior to pulling out the gun? The only threat that would have occurred would have been when he was running, began the process of pulling out the gun. So it would have been before he pulled out the gun. If you're running after a suspect and that suspect reaches in his pants, a lot of cops are just going to shoot him right then and there because of the threat. That is threatening, chasing a suspect and having that suspect reach into his pocket, into his waistband. That would be a threat. Seeing that suspect then actually retrieve a gun, that would be extremely threatening. Seeing that suspect with the gun in his hand would still be a threat. Even seeing that suspect then toss the gun while it's still in his hand, that would still constitute a threat. And it's important to reiterate, assuming our facts to be true, which is the proper standard on a motion to dismiss, he wasn't shot until after that, until after he's showing the officer, I got nothing in my hands, he's facing away from him. And one of the other things we want to emphasize is some of the shots occurred after he already went onto the ground. So not only did you shoot a non-armed guy in the back, you also continued to shoot him after he went to the ground. That's not on the record before us now. That is in the complaint. So what ends up happening, if you prevail in this case, is there will be some discovery. Now the city is going to then get to utilize, assuming we don't take judicial notice here, they're still going to get to utilize the preliminary hearing transcript and you'll have to raise and fight this issue again at summary judgment. And we're confident to do that. You raise up a really interesting point, Your Honor. The final judgment rule was intended to prevent piecemeal appeals. One potential we could have here, we could have potentially four separate appeals. We could have an appeal of a motion to dismiss. We could have appeal with the written indication. We could have an appeal for an MSJ. Then we could have an appeal after the final decision. That is the exact type of piecemeal appeals that the final judgment rule was designed to prevent. Now, going back to what you said, yes, you're right. We're going to have to eventually address the preliminary hearing transcript. And we're confident to do that because the preliminary hearing transcript, as the district court pointed out in their orders, both in the motion to withdraw and the motion to dismiss, well, no, just in the motion for written indication, the district court pointed out, which we have pointed out to them as well, there's testimony in the preliminary hearing transcript and in the plea transcript that supports our position. For example, Officer Horne testified. He ran after Mr. Halloway, and Halloway pulled out a gun. Okay. Horne's partner, who arrived just after the shooting, arrives on scene, sees Officer Horne pointing a gun at Halloway and says, hey, he just tossed a gun over there over the fence. If you listen to Horne's testimony, he shot him while he was pointing the gun at him, which doesn't make any sense because if you shot him while he's pointing the gun at you, why did you not shoot him from the front? And if you shot him while he's pointing the gun at you, why are you telling your partner that he threw it over the fence? And then the state's forensic technician testified during the preliminary hearing, yeah, we found the gun about 15 feet from Mr. Halloway had been shot over the fence. Those are all consistent with the allegations in the first amended complaint. So we're confident that when even the preliminary hearing transcript or even the plea transcripts are submitted into evidence, when that evidence is viewed in the light most favorable to us, we're still going to prevail and be able to establish that the facts which constituted the plea conviction occurred prior to the use of force. And the use of force is a separate set of facts, separate and apart from the facts used to establish the conviction for the PC-69. One thing I want to point out, which completely is a red herring and has absolutely no relevance, crimes that Mr. Halloway didn't plead guilty to. If he was charged with 245 with murder, whatever he was charged with, if he was never convicted of that, you can't introduce that under a heck argument. He didn't plead guilty to it. You can't use crimes that he wasn't found guilty of against him. It has absolutely no relevance. Do you have any case authority on whether the order or whatever the refusal to give an indication? The cases we would cite would first be the code. Under 28 U.S.C. 1292, Section A, you could only appeal final decisions unless there is an exception. Do you have a case on this particular type of order? No. I research. I've never seen a case on this specific type of order. But there is a plethora of cases that state you could only submit an interlocutory appeal if there's an exception to the final judgment rule or if the district court certifies the order so you could file an interlocutory appeal. Procedurally, defendants were supposed to ask the district court, hey, we think you messed up in this order. Please certify this so we could submit an interlocutory appeal and have the court of appeals decide this. They never did that. So, therefore, their appeal is procedurally defective and should be dismissed. If we want any briefing on that point, we'll let you both know. We would submit that, Your Honor. Thank you. And I have nothing further unless the court has any questions for me. Thank you. Thank you. Your Honor, may I have one minute to address a quick point that I think should help address some of these issues? Yes. Something that Mr. Valenzuela brought up is a red herring, which is this idea of these other crimes that he's not convicted of. I'm assuming he's referring to the Penal Code 245-D1. The reason that's relevant, and, Judge Wynn, this goes back to your question, even if you don't look at the preliminary hearing or even if you don't look at the plea transcripts, you do still have the criminal court docket, which establishes that the court found there was probable cause on the Penal Code 245-D1, which was the assault with a deadly weapon on a police officer, which indicates that there is something in the trial court's record that established that there were facts that Mr. Holloway committed an assault with a deadly weapon on a police officer. So even if you don't have those underlying transcripts to establish that, you have the fact that the criminal court found that there was probable cause to hold him to answer. So for those reasons and all the other reasons I've argued, Your Honor, we would submit. Thank you. Thank you, counsel. Thank you both. Okay. This argument will be.
judges: Reinhardt, Tashima, Nguyen